T.C. Memo. 2007-124

UNITED STATES TAX COURT

W.W. EURE, M.D., INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12224-05.               Filed May 17, 2007.

W.W. Eure and Charles P. Copeland (officers), for
petitioner.

<u>Guy H. Glaser</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income tax for 2002 and 2003 (the years at
issue) of $12,416 and $15,404, respectively.  The sole issue for
decision is whether petitioner is a qualified personal service

corporation subject to a special flat income tax rate of 35 percent under section 11(b)(2)[1] rather than the graduated income tax rates for corporations under section 11(b)(1). We hold that it is.

### Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner's principal place of business was Redlands, California, at the time it filed the petition.

Werdna Wayland Eure, Jr., M.D. (Dr. Eure), is a medical doctor who has been a licensed physician and surgeon in California since 1982. Dr. Eure incorporated petitioner as a California professional medical corporation in 1996. Dr. Eure has been petitioner's sole shareholder since its incorporation. Petitioner operated a radiation oncology treatment facility that did business under the name Radiation Therapy Medical Group during the years at issue.

#### Radiation Therapy

Radiation is a kind of energy carried by waves or a stream of particles. Radiation emitted at sufficiently high levels by special machines, which are aimed at tumors or areas of a

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

person's body where there is disease, is used to treat patients with cancer or other diseases (cancer patients). Radiation oncology treatment facilities, like petitioner's, provide radiation therapy, the use of radiation to treat disease, to cancer patients. Radiation therapy is generally applied in either an external or an internal form.

In external radiation therapy, a machine directs high energy radiation rays or particles at the diseased tissue and normal tissue near it. One type of external radiation therapy machine is called a linear accelerator (LINAC). LINAC machines accelerate electrons to produce the high energy radiation used for treatment. Another type of external radiation therapy machine contains a radioactive substance, such as cobalt-60. Use of this latter type of machine is referred to as cobalt therapy.

In internal radiation therapy, a radioactive substance is sealed in a small container called an implant. The implant is inserted into a tumor or, if the tumor has been surgically removed, is placed in the area near where the tumor was located. Unsealed radioactive substances are also used. The material is either taken by mouth or injected into the patient's body.

Only a doctor who has had special training in using radiation to treat disease, referred to as a radiation oncologist, is able to prescribe the type and amount of radiation treatment for cancer patients. A radiation oncologist typically

supervises a team of highly trained healthcare professionals, including radiation technicians and radiation therapy nurses, who assist him or her in providing radiation therapy.

A radiation technician operates the radiation machines used for the radiation therapy treatments given to cancer patients. He or she can operate a LINAC radiation therapy machine or can perform cobalt therapy. A radiation technician also maintains the radiation equipment. A radiation therapy nurse provides nursing care and helps cancer patients learn about radiation therapy treatment and how to manage side effects.

Petitioner's Staffing

Petitioner employed eight employees in 2002 and nine employees in 2003. In 2002, petitioner employed two radiation oncologists, Dr. Eure[2] and Dr. Ramez Farah (Dr. Farah), as well as a full-time radiation nurse, three full-time radiation technicians, one full-time employee who worked as an administrator and as a radiation technician, and a part-time administrative assistant. In 2003, petitioner employed Dr. Eure and Dr. Farah, a full-time radiation nurse, two full-time radiation technicians, one part-time radiation technician, one full-time employee who worked as an administrator and as a radiation technician, a part-time administrative assistant, and a

---

[2]Although Dr. Eure is a radiation oncologist, he performed only administrative and supervisory services for petitioner in connection with the radiation therapy treatments provided to petitioner's cancer patients during the years at issue.

part-time temporary radiation therapist.  All of petitioner's employees devoted their time working for petitioner exclusively to provide radiation therapy treatment to cancer patients or to provide administrative, supervisory, or support services for such radiation therapy treatments.

<u>Petitioner's Return and the Deficiency Notice</u>

Petitioner timely filed Forms 1120, U.S. Corporation Income Tax Return, for the years at issue.  Petitioner reported that it was engaged in the practice of medicine and that its taxable income was subject to the graduated income tax rates for corporations under section 11(b)(1).  Respondent issued petitioner a deficiency notice in which he determined that petitioner was a qualified personal service corporation subject to the flat 35-percent tax rate under section 11(b)(2).[3]  The deficiency amounts represent the increase in petitioner's Federal income taxes that result from applying the flat 35-percent tax rate to the amounts of taxable income shown on the returns for the years at issue.  Petitioner timely filed a petition.

<u>Discussion</u>

We are asked to decide whether petitioner is a qualified personal service corporation taxed at a flat 35-percent tax rate under section 11(b)(2) rather than the graduated rates for

---

[3]The flat 35-percent tax rate set forth in sec. 11(b)(2) equals the highest marginal corporate tax rate set forth in sec. 11(b)(1) for the years at issue.

corporations under section 11(b)(1).  A qualified personal

service corporation is any corporation that satisfies a function

test and an ownership test.[4]  Sec. 448(d)(2)(A) and (B)(i); sec.

1.448-1T(e)(3), (4), and (5), Temporary Income Tax Regs., 52 Fed.

Reg. 22768 (June 16, 1987), as amended by T.D. 8329, 56 Fed. Reg.

485 (Jan. 7, 1991), and T.D. 8514, 58 Fed. Reg. 68299 (Dec. 27,

1993).  Petitioner argues that it is not a personal service

corporation because it fails to satisfy the function test.  We

disagree.

To meet the function test, 95 percent or more of corporate

employees' time must be spent providing services in one of

several enumerated fields, including health.  See Rainbow Tax

Serv., Inc. v. Commissioner, 128 T.C. ____ (2007); sec. 1.448-

1T(e)(4)(i), Temporary Income Tax Regs., supra.  The performance

of any activity incident to the actual performance of services in

a qualifying field is considered the performance of services in

that field for purposes of determining whether the function test

is satisfied.  Sec. 1.448-1T(e)(4)(i), Temporary Income Tax

Regs., supra.  Activities incident to the performance of services

in a qualifying field include the supervision of employees

engaged in directly providing services to clients and performing

---

[4]Petitioner concedes that it satisfies the ownership test because Dr. Eure, one of its employees, directly owned all of petitioner's stock.

administrative and support services incident to such activities.
Id.

Petitioner makes several arguments why it does not meet the function test, all of which we reject. Petitioner first argues that it is a facility, not a person, and therefore cannot provide "personal" services. Petitioner's literal argument is contrary to section 448 and the regulations promulgated thereunder. For purposes of the function test, a qualified personal service corporation is a corporation whose employees perform services in a qualifying field, including health. See sec. 1.448-1T(e)(3) and (4), Temporary Income Tax Regs., supra. Petitioner stipulated that it was established as a professional medical corporation and reported on the returns for the years at issue that it was engaged in the practice of medicine. Thus, we reject petitioner's first argument.

Petitioner next argues that it operates a treatment facility, in the business of creating and containing radiation, rather than a healthcare facility. We find, however, that the employees who work at its radiation therapy treatment facility are rendering services in the field of health. The treatment facility is a healthcare facility because its employees treat patients' healthcare needs. Petitioner's employees provide radiation therapy to cancer patients, and, petitioner therefore provides healthcare services.

Petitioner next argues that the time its radiation technicians spent maintaining and operating the radiation equipment is not time spent performing services in the healthcare field. Petitioner further adds that this time amounted to at least 10 percent of petitioner's employees' total time performing services for petitioner, so it did not spend substantially all (95 percent) of its time in the healthcare field.

The time petitioner's radiation technicians spent maintaining and operating the radiation equipment, however, is not only incident to, but integral to, the overall provision of radiation therapy to petitioner's cancer patients. Petitioner's radiation technicians operated petitioner's LINAC radiation therapy machines and provided cobalt therapy to treat petitioner's cancer patients. Accordingly, the time petitioner's radiation technicians spent operating the radiation equipment is time spent performing services in the healthcare field. In addition, the time they spent maintaining the radiation equipment is time spent providing support services incident to the performance of their services in the healthcare field. We therefore find that all of the time spent by petitioner's radiation technicians was time spent performing services in the healthcare field or performing services incident to the performance of services in the healthcare field.

Petitioner also argues, on another ground, that the time the radiation technicians spent rendering services should not be considered in determining whether substantially all of its time is spent providing healthcare services.  Petitioner urges us to ignore the time they spent because in its view radiation technicians are not among the professionals who provide medical services, according to the applicable regulations; namely, "physicians, nurses, dentists, and other similar healthcare professionals."  See sec. 1.448-1T(e)(4)(ii), Temporary Income Tax Regs., supra.  We disagree.

The enumerated list of professionals, i.e., physicians, nurses, and dentists, is not exclusive.  The term "similar healthcare professionals" for these purposes conveys the need for advanced education and intellectual training "similar" to what is required of physicians, nurses, and dentists.  Id.; see also Chickasaw Ambulance Serv., Inc. v. United States, No. C97-2094, (N.D. Iowa May 21, 1999).  The regulations require that the corporation employ at least one healthcare professional who provides healthcare services to patients.  Sec. 1.448-1T(e)(4), Temporary Income Tax Regs., supra.  The regulations do not require that administrative and support services performed incident to such services be performed by corporate employees who are healthcare professionals.  Healthcare services may be performed by non-healthcare professionals so long as at least one

healthcare professional is employed to perform healthcare services.  Moreover, incidental services may be performed by secretaries, administrative assistants, office managers, or other non-professionals.

In addition, the taxpayer in Chickasaw proved that its emergency medical technicians (EMTs) could perform their jobs without high school diplomas, while petitioner fails to prove that its radiation technicians can perform their jobs without advanced education and intellectual training similar to what is required of physicians, nurses, or dentists.  Petitioner also stipulated that radiation technicians are highly trained but failed to show what level and type of education is required of them.  Moreover, even if petitioner's radiation technicians were not healthcare professionals, the function test is applied by considering the activities of all a corporation's employees. Sec. 1.448-1T(e)(4), Temporary Income Tax Regs., supra.  Unlike Chickasaw, where the only employees of the corporate taxpayer were EMTs who could perform their services without a high school diploma, petitioner provides radiation therapy that only a doctor who has had special training in using radiation to treat disease can prescribe for cancer patients.  Petitioner had such an employee, Dr. Farah.[5]  Dr. Farah is highly trained and educated.

---

[5]Petitioner also employed Dr. Eure, who is highly educated and specially trained, but he did not provide healthcare services during the years at issue.

He has a medical degree and received the special training required of radiation oncologists.

We therefore find that petitioner satisfies the function test by having 95 percent or more of its corporate employees' time spent providing healthcare directly to patients or in performing incidental services.  In addition, the parties agree that petitioner satisfies the ownership test.  Accordingly, petitioner is a qualified personal service corporation subject to the flat tax rate under section 11(b)(2) for the years at issue.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.